UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLUMBIA

MONIQUE DINGLE,                          :
                                         :
        Plaintiff,                       :
                                         :
        v.                               :        Civil Action No. 06-0331 (RCL)
                                         :
                                         :
DISTRICT OF COLUMBIA, *et al.,*          :
                                         :
        Defendants.                      :
_____:

MONIQUE DINGLE,                          :
                                         :
        Plaintiff,                       :
                                         :
        v.                               :        Civil Action No. 06-0950 (RCL)
                                         :
                                         :
MAURICE SCOTT, *et al.,*                 :
                                         :
        Defendants.                      :
_____:

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants District of Columbia, Sean Moore, Maurice Scott, Stuart Emerman, Nancy Oliver and David Anderson ("defendants"), through counsel and pursuant to Fed. R. Civ. P. 56(b), respectfully move this Court for summary judgment on several of plaintiff's claims against them in this matter. As grounds for this motion, defendants state as follows:

1.      Plaintiff's false arrest claims fail because Officer Moore had probable cause to arrest plaintiff on May 8, 2005.

2.      Officer Moore is entitled to qualified immunity for arresting plaintiff on May 8, 2005.

3.      Plaintiff has no separate, valid claim of false arrest for May 23, 2005.

4.    Plaintiff was not assaulted or battered on May 23, 2005.

5.    Officers Scott and Oliver are otherwise entitled to qualified immunity and common law privilege on plaintiff's false arrest and assault and battery claims.

6.    Officer Anderson is otherwise entitled to qualified immunity and common law privilege on plaintiff's false arrest and assault and battery claims.

7.    Sergeant Emerman is otherwise entitled to qualified immunity and common law privilege on plaintiff's false arrest and assault and battery claims.

8.    Plaintiff fails to show a municipal policy or custom supporting the District's liability under Section 1983.

9.    Plaintiff fails to state a claim for negligence.

10.    Plaintiff is not entitled to punitive damages.

A memorandum of points and authorities in support of this motion is attached hereto and incorporated by reference.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Phillip A. Lattimore, III /s/
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Section III

 KERSLYN D. FEATHERSTONE [478758]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6600
(202) 727-3625 (fax)
E-mail: Kerslyn.Featherstone@dc.gov

By:          /s/ Carl J. Schifferle /s/
                 CARL J. SCHIFFERLE [463491]
                 Assistant Attorney General
                 Suite 600S
                 441 Fourth Street, N.W.
                 Washington, D.C. 20001
                 (202) 724-6624
                 (202) 727-3625 (fax)
                 Email:  carl.schifferle@dc.gov

## LOCAL RULE 7(m) CERTIFICATE

As part of continuing discussions to try to narrow the issues raised in this motion, undersigned counsel spoke most recently with plaintiff's counsel on November 5, 2007. Unfortunately, plaintiff's counsel was in trial and would not have the opportunity before the filing of this motion to complete his review of the record and deposition transcripts in this case. Thus, plaintiff's counsel is unable to agree to any resolution of these issues.

                 /s/ Carl J. Schifferle /s/
                 CARL J. SCHIFFERLE
                 Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONIQUE DINGLE,                        :
                                       :
     Plaintiff,                    :
                                       :
     v.                            :        Civil Action No. 06-0331 (RCL)
                                       :
                                       :
DISTRICT OF COLUMBIA, *et al.,*        :
                                       :
     Defendants.                   :
_____:

MONIQUE DINGLE,                        :
                                       :
     Plaintiff,                    :
                                       :
     v.                            :        Civil Action No. 06-0950 (RCL)
                                       :
                                       :
MAURICE SCOTT, *et al.,*               :
                                       :
     Defendants.                   :
_____:

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff brings this consolidated action about two related events involving the plaintiff and Metropolitan Police Department Officers on May 8, 2005 and May 23, 2005. As to both events, plaintiff brings claims of constitutional false arrest (Count I), common law false arrest (Count IV), common law assault and battery (Count II), and gross negligence (Count IV). Plaintiff also raises a separate count seeking punitive damages (Count V). Plaintiff names as

defendants the District of Columbia and Officers Sean Moore, Maurice Scott, Nancy Oliver, David Anderson, and Stuart Emerman.

Upon completion of discovery, defendants now move for summary judgment on most of the claims against them. Defendants seek summary judgment on the false arrest claims relating to May 8, 2005, and all false arrest and assault and battery claims arising from May 23, 2005. Plaintiff's gross negligence and punitive damages counts should also be dismissed. The only claim on which defendants do not seek summary judgment in this motion is plaintiff's claim of assault and battery allegedly occurring on May 8, 2005.

II.    STATEMENT OF FACTS

A.    May 8, 2005

Well after midnight on May 8, 2005, Metropolitan Police Department (MPD) Officers Sean Moore and Manuel Benites drove their police car to the 600 block of Morton Street, Northwest Washington, in response to a noise complaint relayed through the police dispatcher.[1] (Exh. B, Moore Depo. 8-9). The block is a residential area. (Exh. A, Pl. Depo. 36-37). When the officers arrived on the block, the officers saw a crowd of over thirty people in the street and on the sidewalk. (Exh. B, Moore Depo. at 11-12). Among the crowd were the plaintiff and several of her friends, who had just left a party in a nearby apartment building. (Exh. A, Pl. Depo. 24-28, 36-37).

According to Officer Moore, he told the crowd that police had received a noise complaint and that the crowd needed to disperse. (Exh. B, Moore Depo. 13-14). After telling the crowd a

---

[1] There is evidence that complaint may also have been for drug activity. Whether drugs or noise, the nature of the unlawful activity reported does not affect this analysis.

2

second time that they had to disperse, the crowd began to leave except for a smaller group, which

included plaintiff.  (Id. at 15).  Officer Moore then walked over to the smaller group and told

them that they needed to leave or they would be subject to arrest.  (Id. at 15-16).  At that point,

plaintiff's cell phone rang, and she answered it.  (Id. at 17).  After plaintiff began talking on her

cell phone, Officer Moore told her once again that she needed to leave.  (Id. at 17-18).

According to Officer Moore, plaintiff began swearing and yelling at the officer, stating that she

did not need to leave.  (Id. at 18).  As the crowd began to re-assemble during plaintiff's outburst,

Officer Moore warned her again that she would be arrested if she did not desist.  (Id. at 18-19).

When plaintiff refused to comply, Officer Moore told her that she was under arrest for disorderly

conduct.  (Id. at 19-20).

      Plaintiff acknowledges that Officer Moore did approach her group and state that they

needed to leave because of a noise complaint.  (Exh. A, Pl. Depo. 42).  Plaintiff also

acknowledges that she then received a cell phone call from one of her friends and that she

answered the call.  (Id. at 42, 52).  Her friend asked where she was, and plaintiff responded that

she was outside the building.  (Id. at 52).  At that point, though, plaintiff's version of events

differs from the officer's version.  What happened next, according to plaintiff, is that Officer

Moore pushed her by her shoulders toward the police car.  (Id. at 43-44).  At the police car,

Officer Moore allegedly raised plaintiff's left arm behind her back, grabbed her by the neck and

slammed her to the car.  (Id. at 44).  Plaintiff claims that Officer Moore later grabbed her by the

hair and pushed her head down on the car again.  (Id. at 61).  Officer Moore denies using any

such force on the plaintiff.  (Exh. B, Moore Depo. 22).  Plaintiff suffered no bruises and never

sought any medical treatment for the incident.  (Exh. A, Pl. Depo. 47-48).

After handcuffing plaintiff, Officer Moore removed the belongings from plaintiff's pockets and placed her in the back seat of the police car.  (Exh. A, Pl. Depo. 64-65).  Officer Moore requested plaintiff's social security number, which was not on her driver's license, but plaintiff initially refused.  (Id. at 68-69).  Officer Moore then allowed plaintiff's sister to speak with plaintiff.  (Exh. B, Moore Depo. 27-28).  Plaintiff's sister convinced plaintiff to provide her social security number.  (Exh. A, Pl. Depo. 69).  Plaintiff's sister also asked Officer Moore to release plaintiff to her so she could take plaintiff home.  (Exh. B, Moore Depo. 28).  Officer Moore accommodated this request by issuing a 61-D citation, which allowed plaintiff to be released rather than being taken to the police station for processing that night.  (Id.)  Officer Moore advised plaintiff how the citation worked.  (Id. at 29).  Officer Moore also indicated his name and badge number on the citation.  (Exh. A, Pl. Depo. 74-75).  Plaintiff left after retrieving her belongings (although she claims she later discovered her dental retainer was missing).  (Id. at 75-77).

     B.     <u>May 23, 2005</u>

On May 23, 2005, plaintiff and her mother went to the Third District police station. Under the terms of her 61-D citation, plaintiff had to go to the police station within fifteen days to either pay the $25 fine or request a trial date.  (Exh. B, Moore Depo. 26, 33-34).  Plaintiff presented her citation to Officer Scott to request a trial.  (Exh. A, Pl. Depo. 75, 81-82).  After conferring with another officer, Officer Scott allegedly told plaintiff she had to pay the fine or be arrested.  (Id. at 82-83).  Plaintiff claims that Officer Oliver told her the same thing.  (Id. at 97-98).  Plaintiff's mother would not allow plaintiff to be arrested and called a lawyer.  (Id. at 83-87).  Another station officer, Officer Anderson, told plaintiff she would not be arrested but just

4

be given a "live scan," which was necessary for their records in order to request a trial.  (Id. at 90; Exh. C, Dingle Depo. at 28).  Plaintiff and her mother agreed to this procedure.  (Id.)

Officer Anderson entered the information from the 61-D citation into the computerized Criminal Justice Information System.  (Exh. D, Anderson Depo. 9-10).  The system generated an arrest number, which is considered "booking."  (Id.)  Because plaintiff wanted a trial date, Officer Anderson obtained a standard D.C. Superior Court "Citation to Appear in Court" form. (Id. 13-14; Exh. E).  Officer Anderson called Pretrial Services, which provided a court date, and then entered the information on the court citation.  (Exh. D, Anderson Depo. 14-15).  Officer Anderson took plaintiff's thumbprint, which is placed in the box on the second page of the court citation form.  (Id. at 16-17, 24-25; Exh. E at 2).[2]  Officer Anderson asked her to sign the form, advised her of the trial date and possible penalties if she failed to appear.  (Exh. D, Anderson Depo. 19, 29).  Before plaintiff left the station, Sergeant Emerman spoke with plaintiff's mother and their lawyer to try to try to answer their questions and provide the information he could. (Exh. F, Emerman Depo. 25-26, 34-35).

Plaintiff was not handcuffed at the station.  (Id. at 87).  No police officer touched plaintiff that day.  (Id. at 91-92, 96, 105).

III.    ARGUMENT

Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A

---

[2] The court citation form, "Exhibit E," was marked as Exhibit 1 to Officer Anderson's deposition and referenced in his deposition pages 16-19.  Because plaintiff's thumbprint was entered on the court citation, plaintiff was not actually "live-scanned." Live-scanning would have involved a machine taking an image of a full set of fingerprints.  (Exh. D, Anderson Depo. 24-26).

moving party is 'entitled to judgment as a matter of law' against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Waterhouse v. District of Columbia, 298 F.3d 989, 992 (D.C. Cir. 2002), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). It is "well settled that conclusory allegations . . . will not create a triable issue of fact." Carpenter v. Fannie Mae, 174 F.3d 231, 237 (D.C. Cir. 1999). Likewise, a genuine issue of material fact does not exist where plaintiff's evidence is "merely colorable or not significantly probative." Haynes v. Williams, 392 F.3d 478, 485 (D.C. Cir. 2004), quoting Bragdon v. Abbott, 524 U.S. at 624, 653 (1998). "The possibility that a jury might speculate in the plaintiff's favor is insufficient to defeat summary judgment." Haynes, 392 F.3d at 485.

Applying these standards, this Court should grant defendants summary judgment for the reasons explained below.

A.    Plaintiff's False Arrest Claims Fail Because Officer Moore Had Probable Cause To Arrest Plaintiff on May 8, 2005.

Plaintiff's false arrest claims fail because Office Moore had probable cause to arrest. While plaintiff raises both constitutional and common law claims, "the elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim." Scott v. District of Columbia, 101 F.3d 748, 753 (D.C. Cir. 1996). Under either claim, plaintiff must show that Officer Moore lacked probable cause to believe the plaintiff committed a crime. Id. While probable cause is a "fluid concept" incapable of precise definition, "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt." Maryland v. Pringle, 540 U.S. 366, 371 (2003), quoting Illinois v. Gates, 462 U.S. 213, 232 (1983). Where the material facts are undisputed, "the question of probable cause

6

is a legal one to be determined by the court." Tillman v. Washington Metro. Area Transp. Auth., 695 A.2d 94, 96 (D.C. 1997); accord Ornelas v. United States, 517 U.S. 690, 697 (1996).  In determining probable cause, "the court evaluates the evidence from the perspective of the officer, not the plaintiff." Moorehead v. District of Columbia, 747 A.2d 138, 147 (D.C. 2000); accord United States v. Catlett, 97 F.3d 565, 573 (D.C. Cir. 1996).

Moreover, an arrest is lawful upon probable cause that plaintiff committed a crime, regardless of the actual charge identified by the arresting officer.  Because probable cause is an objective inquiry, the arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004).  In Alford, the Supreme Court held that an arrest was lawful even if the offense establishing probable cause was not closely related to the offense identified by the arresting officer at the time of arrest.  Id.  In so holding, the Supreme Court refused to accept that "the constitutionality of an arrest under a given set of known facts will 'vary from place to place and from time to time,' depending on whether the arresting officer states the reason for the detention and, if so, whether he correctly identifies a general class of offense for which probable cause exists." Id. at 154; accord Karriem v. District of Columbia, 717 A.2d 317, 322-23 (D.C. 1998).

While plaintiff was charged with disorderly conduct, Officer Moore also had probable cause to arrest plaintiff for failure to obey his lawful order to move from the location.  Under the D.C. Municipal Regulations, "No person shall fail or refuse to comply with any lawful order or direction of any police officer [or other such person] invested by law with authority to direct, control, or regulate traffic." 18 D.C.M.R. § 2000.2.  This section expressly applies to the conduct of pedestrians, not just the operators of vehicles.  18 D.C.M.R. § 2000.2.  Violation of

this section is a criminal offense. "Any person who fails to comply with the requirements of this section shall, upon conviction, be fined not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000)." 18 D.C.M.R. § 2000.10.

The undisputed material facts established probable cause that plaintiff committed the offense of failure to obey. First, Officer Moore lawfully ordered plaintiff and the rest of the crowd to move from the location. Officer Moore had received a report of a noise complaint, and he saw a large crowd in the street and sidewalk well after midnight in a residential area. (Exh. B, Moore Depo. 8-9, 11-12). As a Metropolitan Police Officer, Officer Moore had the authority to "direct, control and regulate traffic," including the crowd of pedestrians. 18 D.C.M.R. § 2000.2. Plaintiff herself felt it was reasonable for Officer Moore to direct the crowd to move along. (Exh. A, Pl. Depo. 115-16). Second, plaintiff failed to obey the officer's order. Plaintiff saw Officer Moore approach her group and heard him direct them to move along because of a noise complaint. (Id. at 42). Instead of complying with the order, plaintiff answered her cell phone and began a conversation with the caller. (Id. at 42, 52). Plaintiff had the opportunity to comply with the officer's order, just as she had the choice instead to answer her cell phone and engage in a conversation. Because she chose the latter, plaintiff's conduct was, by all outward appearances, a refusal to obey the officer's order.

Because Officer Moore had probable cause to arrest the plaintiff, her false arrest claims fail as a matter of law.

B.    Officer Moore Is Entitled To Qualified Immunity for Plaintiff's Arrest on May 8, 2005.

Officer Moore is entitled to qualified immunity on plaintiff's Fourth Amendment claim of false arrest. Qualified immunity is "an entitlement not to stand trial or face the other burdens

8

of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Given its nature, qualified immunity is a question of law for the Court to decide "at the earliest possible stage of litigation." Saucier v. Katz, 533 U.S. 194, 200-01 (2001). To evaluate qualified immunity, a court must determine whether, at the time of the officer's actions, it was "clearly established," in a "particularized" sense, that the officer was violating the Fourth Amendment in the "situation [he] confronted." Id. at 202; accord Brosseau v. Haugen, 543 U.S. 194 (2004) (summarily reversing denial of qualified immunity to police officer on Fourth Amendment excessive force claim, where Court of Appeals incorrectly evaluated qualified immunity only under general Fourth Amendment principles).

On a constitutional false arrest claim, a police officer is entitled to qualified immunity if "a reasonable officer could have believed that probable cause existed to arrest." Hunter v. Bryant, 502 U.S. 224, 228 (1991). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Id. at 229, quoting Malley v. Briggs, 475 U.S. 335, 343, 341 (1986). Thus, an officer who "reasonably, but mistakenly, concludes that probable cause is present" is not liable for making the arrest. Hunter, 502 U.S. at 227.

In the present case, it was not clearly established that the arrest of plaintiff was unlawful in the particular situation Officer Moore confronted. Even if this Court determines Officer Moore lacked probable cause, a reasonable officer could nevertheless have believed that plaintiff "fail[ed] or refuse[d] to comply" with his lawful directive to move from the location. 18 D.C.M.R. § 2000.2. Plaintiff acknowledges that she heard the order to move and that the order was reasonable, but instead of moving she answered her cell phone and began a conversation with the caller. A reasonable officer could have believed that her conduct was a refusal of his

order, even if the officer's belief turned out to be mistaken.  See Brown v. Gilmore, 278 F.3d

362, 367-68 (4th Cir. 2002) (granting qualified immunity to officer who arrested plaintiff for

disobeying his order to move her car where officer had reason to believe plaintiff heard the order

although plaintiff claimed she never heard it).

Because Officer Moore is entitled to qualified immunity, summary judgment should be

entered in his favor on plaintiff's constitutional false arrest claim.


        C.        <u>Plaintiff Has No Separate, Valid Claim of False Arrest for May 23, 2005</u>.

Plaintiff cannot maintain false arrest claims against the District and Officers Scott, Oliver

Anderson and Emerman based on the events of May 23, 2005.  Plaintiff was arrested on only one

occasion, which was May 8, 2005.  At the scene of the May 8th arrest, Officer Moore promptly

released plaintiff by issuing a 61-D citation, which allowed plaintiff to go on her own to the

police station for processing rather than being taken by police to the station that night.  When

plaintiff went to the police station on May 23, 2005, she was appearing as required under the

terms of that citation and in order to request a court date on that charge.  Her visit to the station

on May 23, 2005, can therefore only be properly understood as the completed processing of

plaintiff's May 8, 2005 arrest, not a second and separate arrest.  Indeed, her official arrest record

shows just a single arrest.  (Exh. D, Anderson Depo. 41).

Moreover, the events at the station demonstrate that plaintiff was not arrested a second

time on May 23, 2005.  Although officers discussed whether plaintiff had to be arrested or pay

the fine at the station, Officer Anderson told plaintiff she would not be arrested but just be given

a "live scan," which was necessary for their records in order to request a trial.  (Exh. A, Pl. Depo.

90; Exh. C, Dingle Depo. 28).  It was therefore expressly understood that this procedure was not

an arrest.  Moreover, plaintiff and her mother agreed to the procedure.  (Exh. A, Pl. Depo. 90).

See Faniel v. Chesapeake and Potomac Tel. Co., 404 A.2d 147 (D.C. 1979) (holding that "if the

submission is voluntary, as where an accused voluntarily accompanies his accusers to vindicate

himself, then no false imprisonment occurs").  While Officer Anderson then took plaintiff's

fingerprint, obtained a court date from Pretrial Services, and asked her to sign the citation to

appear in court, (id. at 91-93), plaintiff was not handcuffed at the station.  (Id. at 87).  In fact, no

police officer touched plaintiff that day.  (Id. at 91-92, 96, 105).

     Accordingly, plaintiff has no separate, viable claim for false arrest based on her visit to

the police station on May 23, 2005.


     D.     Plaintiff Was Not Assaulted or Battered on May 23, 2005.

     Plaintiff's assault and battery claims against the District and Officers Scott, Oliver,

Anderson and Emerman all fail because plaintiff was not assaulted or battered on May 23, 2005.

Although pled as a single count, "assault and battery are technically distinct intentional torts."

Holder v. District of Columbia, 700 A.2d 738, 741 (D.C. 1997).  While assault "is an intentional

and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff," a

battery is "an intentional act that causes a harmful or offensive bodily contact."  Id., quoting

Etheredge v. District of Columbia, 635 A.2d 908, 916 (D.C. 1993).  Thus, the distinction is that

an assault "results from apprehension of an imminent harmful or offensive contact, in contrast

with the contact itself."  District of Columbia v. Howard, 588 A.2d 683, 690 (D.C. 1991).

     Where, as here, plaintiff's claims of assault and battery are made against police officers,

plaintiff must overcome an officer's common law privilege to use or threaten force to carry out

her law enforcement duties.  As protection against a battery claim, a police officer has a qualified

privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." Id. (citations omitted). Moreover, "a police officer is protected to an even greater degree against assault claims," where liability can only be established if the threatened use of force is "clearly excessive." District of Columbia v. Jackson, 412 A.2d 948, 956 (D.C. 1980).

Plaintiff's claim of battery on May 23, 2005, is not supported by the evidence. Plaintiff acknowledges that she was not handcuffed at the station, (Exh. A, Pl. Depo. 87), and that no police officer touched her that day. (Id. at 91-92, 96, 105). By admitting the lack of any harmful or offensive touching, plaintiff has no claim for battery.

Plaintiff's claim of assault on May 23, 2005, is similarly unsupported by the evidence. While officers allegedly told plaintiff that she would have to be arrested or pay the fine for the 61-D citation, plaintiff cannot show that the officers' actions were "clearly excessive." The police needed to complete the processing of her May 8th arrest and provide her a court date on the charge. No police officer is alleged to have drawn a weapon or threatened any force against the plaintiff. Plaintiff had her mother present and was able to contact a lawyer as well. (Id. at 83-84). It was soon agreed that plaintiff would not be arrested, and she was never handcuffed. (Id. at 87, 90; Exh. C, Dingle Depo. at 28). Officer Anderson finished the processing by taking plaintiff's fingerprint, obtaining a court date, and completing the citation to appear in court. (Exh. A, Pl. Depo. 91-93). Plaintiff's evidence is therefore insufficient to show any "threat of physical harm," let alone a threat that was "clearly excessive."

Accordingly, plaintiff cannot establish a claim for assault and battery based on the events of May 23, 2005.

E.    Officers Scott and Oliver Are Otherwise Entitled To Qualified Immunity and Common Law Privilege on Plaintiff's False Arrest and Assault and Battery Claims.

Assuming arguendo that plaintiff can show false arrest or assault and battery on May 23, 2005, Officers Scott and Oliver are protected by qualified immunity and common law privilege. On a claim of constitutional false arrest, qualified immunity protects an officer who "reasonably, but mistakenly, concludes that probable cause is present." Hunter, 502 U.S. at 227.  (See supra at 8-10).  On the common law claim of false arrest, an arrest is similarly privileged where the officer reasonably believed, in good faith, that his or her conduct toward the plaintiff was lawful. District of Columbia v. Murphy, 631 A.2d 34, 36 (D.C. 1993).  In evaluating this privilege, the evidence must be considered "from the perspective of the arresting officer, not of the plaintiff." Id. at 36-37.

Officers Scott and Oliver cannot be liable for false arrest because they never arrested or detained plaintiff.  The allegations against these officers are simply that plaintiff presented her 61-D citation to Officer Scott to request a trial, and that Officers Scott and Oliver allegedly told her that she had to pay the fine or be arrested.  (Exh. A, Pl. Depo. 75, 81-83, 97-98).  Even assuming these officers had a role in any alleged arrest of plaintiff, Officers Scott and Oliver were entitled to rely on the validity of the charge contained in the citation.  See Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful.")  Because reasonable officers in the position of Officers Scott and Oliver could have believed that their conduct toward plaintiff was lawful, Officers Scott and Oliver are entitled to qualified immunity and common law privilege.

13

Moreover, Officers Scott and Oliver did not assault or batter the plaintiff. Even if they stated that plaintiff would have to pay the fine or be arrested, they did not touch the plaintiff or threaten force against her. Even assuming that the officers' conduct could somehow constitute an assault, the officers' alleged actions were not "clearly excessive" given the need to complete the processing of plaintiff's May 8th arrest and provide her a court date on the charge. See Jackson, 412 A.2d at 956. Thus, Officers Scott and Oliver are also protected by common law privilege against plaintiff's assault and battery claims.

F.    Officer Anderson Is Otherwise Entitled To Qualified Immunity and Common Law Privilege on Plaintiff's False Arrest and Assault and Battery Claims.

Officer Anderson likewise cannot be held liable for false arrest or assault and battery. Plaintiff's allegations against Officer Anderson are that he told plaintiff she would not be arrested but just be given a "live scan," which was necessary for their records to obtain a trial. (Exh. A, Pl. Depo. 90; Exh. C, Dingle Depo. 28). Plaintiff and her mother agreed to this procedure, and so Officer Anderson took plaintiff's fingerprint, obtained a court date from Pretrial Services, and asked plaintiff to sign the citation to appear in court. (Exh. A, Pl. Depo. 90-93). Like Officers Scott and Oliver, Officer Anderson was entitled to rely upon the validity of the charge described in the 61-D citation. Loria, 306 F.3d at 1288. Moreover, Officer Anderson told plaintiff she was not being arrested and understood that plaintiff voluntarily accompanied him to receive a court date. (Exh. D, Anderson Depo. 23, 46-47). He did not use or threaten any force against plaintiff. Plaintiff also acknowledges that Officer Anderson was pleasant and treated her respectfully. (Exh. A, Pl. Depo. 93). Officer Anderson is therefore entitled to qualified immunity and common law privilege on all claims against him.

G.     <u>Sergeant Emerman Is Otherwise Entitled To Qualified Immunity and Common Law Privilege on Plaintiff's False Arrest and Assault and Battery Claims</u>.

Sergeant Emerman cannot be held liable for false arrest or assault and battery.  Sergeant Emerman did not even have any interaction with the plaintiff.  As a supervisor, he was called to the front of the station to assist plaintiff's mother and their lawyer.  (Exh. F, Emerman Depo. 18-20).  Sergeant Emerman spoke with them to try to try to answer their questions and provide the information he could.  (Id. 25-26, 34-35).  These facts provide no basis for liability against Sergeant Emerman.

H.     <u>Plaintiff Fails To Show a Municipal Policy or Custom Supporting the District's Liability under Section 1983</u>.

Plaintiff cannot show a District policy that caused the alleged constitutional violations.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 (1978).  The District of Columbia is not liable for the constitutional torts of its employees or agents on the theory of <u>respondeat superior</u>.  <u>Monell</u>, 436 U.S. at 691.  Instead, to prevail on a claim against the District, plaintiff must "show fault on the part of the city based on a course of action its policy-makers consciously chose to pursue."  <u>Carter v. District of Columbia</u>, 795 F.2d 116, 122 (D.C. Cir. 1986).  A policy-maker, for municipal liability purposes, is a person or persons having "final policy-making authority [under] state law."  <u>Triplett v. District of Columbia</u>, 108 F.3d 1450, 1453 (D.C. Cir. 1997), quoting <u>Jett v. Dallas Independent School Dist.</u>, 491 U.S. 701, 737 (1989).  The alleged municipal policy must have been the "moving force" behind the constitutional violation.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989).

In this case, plaintiff has no evidence of any municipal policy or custom.  Even the complaint offers no factual allegations that plaintiff's injury resulted from a course of action that

a District policy-maker consciously chose to pursue.  While plaintiff alleges that MPD officers

violated plaintiff's Fourth Amendment rights by falsely arresting her, plaintiff's basis for

imputing liability to the District relies solely on a theory of <u>respondeat</u> <u>superior</u>.  (Compl. No.

06-cv-331 ¶ 33; Compl. No. 06-cv-950 ¶ 38).  Because <u>respondeat</u> <u>superior</u> is not grounds for

municipal liability under <u>Monell</u>, defendant District of Columbia is entitled to summary

judgment on plaintiff's constitutional claims (Count I).


     I.       <u>Plaintiff Fails To State a Claim for Negligence</u>.

     Plaintiff's claims of gross negligence fail as a matter of law.  Assault and battery are

intentional torts, and "[i]ntent and negligence are regarded as mutually exclusive grounds for

liability."  <u>District of Columbia v. Chinn</u>, 839 A.2d 701, 706 (D.C. 2003).   Where a plaintiff

impermissibly combines the two theories, negligence and intentional tort, "into a single cause of

action, [he] in essence [is] pleading a non-existent cause of action." <u>Sabir v. District of</u>

<u>Columbia</u>, 755 A.2d 449, 452 (D.C. 2000).  As the Court stated in <u>Sabir</u>, "[t]here is no such thing

as a negligent assault."  <u>Id.</u>, quoting 1 F. Harper & F. James, <u>The Law of Torts</u> § 3.5 at 3:19 (3d

ed. 1996).  "In other words, a plaintiff cannot seek to recover by 'dressing up the substance' of

one claim, assault, in the 'garments' of another, here negligence."  <u>Id.</u>, quoting <u>United States</u>

<u>Nat'l Ins. Co. v. The Tunnel, Inc.</u>, 988 F.2d 351, 354 (2d Cir. 1993).  "[I]t is impossible to

negligently commit assault and/or battery as the states of mind are separate and incompatible."

<u>Chinn</u>, 839 A.2d at 708.

     In <u>Chinn</u>, the Court found error in submitting both plaintiff's negligence claim and

assault and battery claim to the jury.  At trial, Chinn testified that police officers pulled him out

of his car and repeatedly beat him with a blunt object.  As the Court found, plaintiff could not

present a cause of action for negligence in these circumstances. "While . . . the officers may have mistakenly believed that they needed to exert the amount of force that they did, that does not affect the intentionality of the initial action or the objective excessiveness of the force." Id. at 707. In other words, "[t]he battery did not transmogrify into negligence by the fact that officers may have in the process mistakenly crossed the line of permissible force." Id. The Court therefore reasoned "where the excessive force is the product of a battery . . . the cause of action is a battery alone." Id. "To instruct in such circumstances on a separate and distinct tort of negligence is not only doctrinally unsound but a potential source of jury confusion." Id.

The same holding applies in the present case. Here, plaintiff's count of negligence contends that "Defendants knew, or in the exercise of reasonable care should have known, that the physical assaults and unconsented touching of the Plaintiff constituted a serious danger to the physical and mental well being of the Plaintiff." (Compl. No. 06-cv-331 ¶ 45; Compl. No. 06-cv-950 ¶ 50). The alleged physical assaults and unconsented touching would obviously have been intentional. Indeed, plaintiff's second count is for assault and battery based presumably on the same alleged conduct. (Compl. No. 06-cv-331 ¶ 35-41; Compl. No. 06-cv-950 ¶ 40-46). Thus, plaintiff's "cause of action is for battery alone." Id. Accordingly, plaintiff's negligence claim should be dismissed.

J.    Plaintiff Is Not Entitled To Punitive Damages.

Plaintiff is not entitled to punitive damages against any defendant. In the District of Columbia, "[p]unitive damages are warranted only when the defendant commits a tortious act accompanied by fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right, or other circumstances tending to aggravate the injury." Butera v. District of

Columbia, 235 F.3d 637, 657 (D.C. Cir. 2001), quoting Jonathan Woodner Co v. Breeden, 665

A.2d 929, 938 (D.C. 1995). A jury may therefore award punitive damages only if plaintiff can

establish by "clear and convincing evidence" that (1) "the defendant acted with evil motive,

actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard

for the rights of the plaintiff," and (2) "the defendant's conduct itself was outrageous, grossly

fraudulent, or reckless toward the safety of the plaintiff." District of Columbia v. Jackson, 810

A.2d 388, 396 (D.C. 2002).

Punitive damages are never warranted against the District of Columbia. Smith v. District

of Columbia, 336 A.2d 831, 832 (D.C. 1975). Plaintiff is also not entitled to punitive damages

against Officers Scott, Oliver, Anderson and Emerman, even if plaintiff has any remaining claim

against any of them. For all the reasons argued in the previous sections, plaintiff has no evidence

of "evil motive" or "outrageous" conduct warranting punitive damages based on any interaction

these four officers had with the plaintiff on May 23, 2005. (See supra at 13-15).

Plaintiff also has an insufficient basis to seek punitive damages against Officer Moore

with regard to the events of May 8, 2005. In addition to the reasons previously argued in

regard to the false arrest claim (see supra at 6-10), plaintiff has no clear and convincing evidence

of "outrageous" conduct by Officer Moore. Although plaintiff claims excessive force, she

suffered no bruising or any injuries requiring medical treatment. (Exh. A, Pl. Depo. 47-48).

Moreover, Officer Moore accommodated plaintiff by allowing her sister to speak with her while

in custody and later releasing plaintiff to her sister on the scene rather than taking plaintiff to the

police station that night. (Exh. B, Moore Depo. 27-28). Officer Moore was also careful to

advise plaintiff about the 61-D citation and indicated his name and badge number on the citation.

(Id. at 29; Exh. A, Pl. Depo. 74-75).    Accordingly, plaintiff is not entitled to punitive damages against any defendant.

IV.    CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court enter summary judgment in their favor on the constitutional and common law false arrest claims (Counts I and IV); the assault and battery claims against the District of Columbia and Officers Scott, Oliver, Anderson and Emerman for the events of May 23, 2005 (Count II); the gross negligence claims (Count III); and the punitive damages claims (Count V).

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


/s/ Phillip A. Lattimore, III /s/
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Section III

 KERSLYN D. FEATHERSTONE [478758]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6600
(202) 727-3625 (fax)
E-mail: Kerslyn.Featherstone@dc.gov

19

By:      /s/ Carl J. Schifferle /s/
            CARL J. SCHIFFERLE [463491]
            Assistant Attorney General
            Suite 600S
            441 Fourth Street, N.W.
            Washington, D.C. 20001
            (202) 724-6624
            (202) 727-3625 (fax)
            Email:  carl.schifferle@dc.gov

UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MONIQUE DINGLE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-0331 (RCL) |
| | : | |
| | : | |
| DISTRICT OF COLUMBIA, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| ———————————————— | : | |
| | | |
| MONIQUE DINGLE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-0950 (RCL) |
| | : | |
| | : | |
| MAURICE SCOTT, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| ———————————————— | : | |

DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

A.     May 8, 2005

1.     Well after midnight on May 8, 2005, Metropolitan Police Department (MPD) Officers Sean Moore and Manuel Benites drove their police car to the 600 block of Morton Street, Northwest Washington, in response to a noise complaint relayed through the police dispatcher.  (Exh. B, Moore Depo. 8-9).

2.     The 600 block of Morton Street, N.W., is a residential area.  (Exh. A, Pl. Depo. 36-37).

3.      When Officers Moore and Benites arrived on the block, they saw a crowd of over thirty people in the street and on the sidewalk.  (Exh. B, Moore Depo. at 11-12).

4.      Among the crowd were the plaintiff and several of her friends, who had just left a party in a nearby apartment building.  (Exh. A, Pl. Depo. 24-28, 36-37).

5.      Officer Moore told the crowd that police had received a noise complaint and that the crowd needed to disperse.  (Exh. B, Moore Depo. 13-14).

6.      After telling the crowd a second time that they had to disperse, the crowd began to leave except for a smaller group, which included plaintiff.  (Id. at 15).

7.      Officer Moore then walked over to the smaller group and told them that they needed to leave or they would be subject to arrest.  (Id. at 15-16).

8.      It was reasonable for Officer Moore to direct the crowd to move along.  (Exh. A, Pl. Depo. 115-16).

9.      At that point, plaintiff's cell phone rang, and she answered it.  (Id. at 42).

10.     Plaintiff began a conversation with the caller, who was a friend.  (Id. at 42, 52).

11.     Plaintiff's friend asked where she was, and plaintiff responded that she was outside the building.  (Id. at 52).

12.     Although plaintiff claims that Officer Moore then used force against her, plaintiff suffered no bruises and never sought any medical treatment for any injuries.  (Id. at 47-48).

13.     After handcuffing plaintiff, Officer Moore removed the belongings from plaintiff's pockets and placed her in the back seat of the police car.  (Id. at 64-65).

14.     Officer Moore requested plaintiff's social security number, which was not on her driver's license, but plaintiff initially refused.  (Exh. A, Pl. Depo. 68-69).

2

15. Officer Moore allowed plaintiff's sister to speak with plaintiff. (Exh. B, Moore Depo. 27-28).

16. Plaintiff's sister convinced plaintiff to provide her social security number. (Exh. A, Pl. Depo. 69).

17. Plaintiff's sister also asked Officer Moore to release plaintiff to her so she could take plaintiff home. (Exh. B, Moore Depo. 28).

18. Officer Moore accommodated the sister's request by issuing a 61-D citation, which allowed plaintiff to be released rather than being taken to the police station for processing that night. (Id.)

19. Officer Moore advised plaintiff how the 61-D citation worked and also indicated his name and badge number on the citation. (Id. at 29; Exh. A, Pl. Depo. 74-75).

20. Plaintiff left after retrieving her belongings (although she claims she later discovered her dental retainer was missing). (Exh. A, Pl. Depo. at 75-77).


B.  May 23, 2005

21. On May 23, 2005, plaintiff and her mother went to the Third District police station. (Compl.)

22. Under the terms of her 61-D citation, plaintiff had to go to the police station within fifteen days to either pay the $25 fine or request a trial date. (Exh. B, Moore Depo. 26, 33-34).

23. Plaintiff presented her citation to Officer Scott to request a trial. (Pl. Depo. 75, 81-82).

24.     Officers Scott and Oliver allegedly told plaintiff she had to pay the fine or be arrested.  (Id. at 82-83, 97-98).

25.     Plaintiff's mother would not allow plaintiff to be arrested and called a lawyer. (Id. at 83-87).

26.     Another station officer, Officer Anderson, told plaintiff she would not be arrested but just be given a "live scan," which was necessary for their records in order to request a trial. (Id. at 90; Exh. C, Dingle Depo. at 28).

27.     Plaintiff and her mother agreed to the procedure described by Officer Anderson. (Id.)

28.     Officer Anderson entered the information from the 61-D citation into the computerized Criminal Justice Information System.  (Exh. D, Anderson Depo. 9-10).

29.     The system generated an arrest number, which is considered "booking."  (Id.)

30.     Because plaintiff wanted a trial date, Officer Anderson obtained a standard D.C. Superior Court "Citation to Appear in Court" form.  (Id. 13-14; Exh. E).

31.     Officer Anderson called Pretrial Services, which provided a court date, and then entered the information on the court citation.  (Exh. D, Anderson Depo. 14-15).

32.     Officer Anderson took plaintiff's thumbprint, which is placed in the box on the second page of the court citation form.  (Id. at 16-17, 24-25; Exh. E at 2).

33.     Plaintiff was not actually "live-scanned," which would have involved a machine taking an image of a full set of fingerprints.  (Exh. D, Anderson Depo. 24-26).

34.     Officer Anderson asked her to sign the court citation form, advised her of the trial date and possible penalties if she failed to appear.  (Exh. D, Anderson Depo. 19, 29).

35.     Officer Anderson was pleasant to plaintiff and treated her respectfully.  (Exh. A, Pl. Depo. 93).

36.     Meanwhile, Sergeant Emerman was called to the front of the station to assist plaintiff's mother and their lawyer.  (Exh. F, Emerman Depo. 18-20).

37.     Sergeant Emerman spoke with plaintiff's mother and their lawyer to try to try to answer their questions and provide the information he could.  (Exh. F, Emerman Depo. 25-26, 34-35).

38.     Plaintiff was not handcuffed on May 23, 2005.  (Exh. A, Pl. Depo. 87).

39.     No police officer touched plaintiff on May 23, 2005.  (Id. at 91-92, 96, 105).

40.     Plaintiff's arrest record reflects only a single arrest.  (Exh. D, Anderson Depo. 41).

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


/s/ Phillip A. Lattimore, III /s/
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Section III


 KERSLYN D. FEATHERSTONE [478758]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6600
(202) 727-3625 (fax)
E-mail: Kerslyn.Featherstone@dc.gov

By:        /s/ Carl J. Schifferle /s/
           CARL J. SCHIFFERLE [463491]
           Assistant Attorney General
           Suite 600S
           441 Fourth Street, N.W.
           Washington, D.C. 20001
           (202) 724-6624
           (202) 727-3625 (fax)
           Email:  carl.schifferle@dc.gov