# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### Civil Division

MONIQUE DINGLE                          :

    Plaintiff,                          :

        v.                          :

DISTRICT OF COLUMBIA, <u>et</u> <u>al</u>.         :

    Defendants.                        :
_____  Civil Action Nos. 06-00331
                                                              06-00950
MONIQUE DINGLE                    : (RCL)

    Plaintiff,                          :

        v.                          :

MAURICE SCOTT, <u>et</u> <u>al</u>.                 :

    Defendants.                        :


## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Plaintiff, by and through undersigned counsel, hereby respectfully submits her

Opposition to Defendants' Motion for Partial Summary Judgment and further states:

This case stems from an incident which occurred on May 8, 2005 wherein the

Plaintiff, an honor roll student, was assaulted and arrested without legal justification. A

few weeks later, when Plaintiff and her mother went to the police station to dispute this

Regan
Zambri & Long, P.L.L.C.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

"noise violation[1]," Plaintiff was instructed that in order to request a trial she needed to be arrested. Plaintiff and her mother were then surrounded by at least six police officers and were unable to leave the station. Plaintiff was then arrested and fingerprinted.

Plaintiff suffered physical injuries as well as a permanent arrest record as a result of the police misconduct in this case. Plaintiff appeared at the court hearing for the "noise violation" and all charges were dismissed. Not a single member of the Metropolitan Police Department attended the court date. Plaintiff missed the majority of her senior class trip to Hawaii to attend the hearing.[2]

Defendants' motion for partial summary judgment largely misstates the facts at issue and the legal precedent surrounding Plaintiff's claims. Thus, Defendants' motion for partial summary judgment should be denied. However, in the interests of judicial efficiency and narrowing the scope of issues for trial, Plaintiff does agree to dismiss her claims against Sergeant Emmerman and Officer Oliver. However, all other claims against the several other officers who violated Plaintiff's constitutional and common law rights, on at least two occasions, are wholly supported by the evidence and case law of this jurisdiction.

In further support of her Opposition, the Plaintiff respectfully refers the Court to the attached Memorandum of Points and Authorities.

Regan
Zambri & Long, P.L.L.C.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[1] Plaintiff was given a citation on May 8th for disorderly conduct, however, Defendants now argue that Plaintiff was in violation of 18 D.C.M.R § 2000.2. This section prohibits a person from refusing to comply with an order from an officer vested with authority to direct, control, or regulate traffic. (Defs.' Mot. at p. 7) Such an argument is tenuous at best.

[2] As the Court will recall, Plaintiff also suffered significant frustration and costs associated with serving the individual police officers in this matter. See docket entries #22, 24 in Case No. 06-950.

Respectfully submitted,

REGAN ZAMBRI & LONG, PLLC

By:                **/s/Patrick M. Regan**

Patrick M. Regan    No. 336107
Paul J. Cornoni      No. 489398
1919 M Street, NW, Suite 350
Washington, D.C.  20036
PH:  (202) 463-3030
*Counsel for Plaintiff*

Regan
Zambri & Long, P.L.L.C.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 3 -

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment, Memorandum of Points and Authorities in support thereof, Statement of Material Facts in Dispute and proposed Order was electronically filed and served via ECF, this   5th   day of December, 2007, to:

> Carl Schifferle, Esquire
> Kersyln Featherston, Esquire
> Assistant Attorney General
> 441 Fourth Street, NW, 6th Floor South
> Washington, DC  20001
> PH:    (202) 724-6624
> FAX:   (202) 724-3635
> *Counsel for Defendants*

                                                                /s/Patrick M. Regan
                                        Patrick M. Regan

Regan
Zambri & Long, P.L.L.C.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### Civil Division

MONIQUE DINGLE                                    :

    Plaintiff,                                    :

        v.                                    :

DISTRICT OF COLUMBIA, <u>et al</u>.                :

    Defendants.                                    :
_____    Civil Action Nos. 06-00331
                                      06-00950
MONIQUE DINGLE                          : (RCL)

    Plaintiff,                                    :

        v.                                    :

MAURICE SCOTT, <u>et al</u>.                          :

    Defendants.                                    :


## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, by and through undersigned counsel, hereby submits this Memorandum in Support of Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment.  In support thereof, the Plaintiff respectfully states as follows:

### FACTS

#### May 8, 2005

On May 8, 2005, Plaintiff Monique Dingle, an honor roll student with no prior criminal record, and six female friends were conversing at the 600 block Morton Street,

N.W., Washington, D.C. At this time, Defendant Police Officer Sean Moore approached Plaintiff. Defendant Moore stated that he had received a noise complaint and told Plaintiff Monique Dingle and her friends that they would have to find somewhere else to go.

As Plaintiff and her friends were exiting the area, Plaintiff Monique Dingle's cell phone rang and she answered it. (Deposition of Monique Dingle, Exhibit A at pp. 54-55) Defendant Moore became incensed and struck Plaintiff on her shoulders and said, "Don't fuck with me. I told you to get the fuck off the block." (Exhibit A at pp. 43-44) Immediately thereafter, Defendant Moore grabbed Plaintiff Monique Dingle's left arm, twisted it behind her back and grabbed her by the neck. Defendant Moore then forced Plaintiff's body onto the police car. (Exhibit A at pp. 43-45, 61-62)

Testimony from a number of eyewitnesses demonstrates that Plaintiff and her friends were exiting the area when Officer Moore violently confronted the Plaintiff. (Exhibit A at pp. 54-55; Witness Statement of Morgan Dingle, Exhibit B at pp.1-2; Witness Statement of Katrina Wheeler, Exhibit C at pp. 1-2; and Witness Statement of Precious Goodbee, Exhibit D at pp. 1-2) Defendant Moore then grabbed Plaintiff Dingle's hair, slammed her face against the police car and placed handcuffs on her right arm. (Exhibit A at pp. 43-45, 61-62)

Defendant Moore then placed Ms. Dingle under arrest. Soon thereafter, Defendant Moore advised Plaintiff Dingle that he was giving her a $25.00 disorderly conduct citation and that she had to pay it within a certain number of days or there

would be a warrant out for her arrest.  Ms. Dingle then gathered her belongings and noticed that her $800 dental retainer was missing.  (Id. at p. 76.)

During the entire incident, Plaintiff did not commit a criminal offense; Defendant Moore lacked probable cause to arrest Plaintiff Dingle and/or lacked a good-faith reasonable belief that he had a reason and/or justification to arrest Plaintiff.  (Expert Witness Report of Robert Klotz, Exhibit E at pp. 3-5)

**May 23, 2005**

On May 23, 2005, Plaintiff Dingle and her mother went to the DC Metropolitan Police Department's Third District Station to request a trial in connection with Plaintiff's citation.  The citation stated that the fine is not required to be paid in order to request a trial.  At this time, Defendants Maurice Scott and David M. Anderson advised Plaintiff Dingle that her only options were to pay the fine or be immediately arrested.  (Exhibit A at pp. 82-83; Deposition Testimony of Angela Dingle, Exhibit F at pp. 20, 22-27; Deposition Testimony of Defendant Scott, Exhibit G at p. 10-12)

The aforementioned Defendants then actively participated in and/or caused the unlawful arrest of Plaintiff through numerous actions, including but not limited to, not allowing Plaintiff to leave the Third District Station, fingerprinting Plaintiff, and restricting Plaintiff's physical movement.  Plaintiff and her mother both testified that they were surrounded by at least six officers and were intimidated.  Plaintiff and her mother were not allowed to leave the station and their physical movement was restricted. (Exhibit A at pp. 85-89, 97; Exhibit F at pp. 22-26, 35-36)

Plaintiff Dingle was then taken to the back of the station and fingerprinted by Defendant Anderson.   Defendant Anderson advised Plaintiff that she must sign the citation that states that she has been arrested and charged with a criminal offense. (Deposition Testimony of Defendant Anderson, Exhibit H at pp. 24-25)

Plaintiff was advised that she must appear in court on June 14, 2005 or that a warrant would be issued for her arrest.   Plaintiff missed the majority of her senior class trip to Hawaii in order to attend the June 14, 2005 court date.   Plaintiff Dingle appeared in court on June 14, 2005 and the charges were dismissed.   No member of the Metropolitan Police Department attended the court hearing on this date.

## LEGAL STANDARD

Summary judgment should only be granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." Breen v. Dep't of Transp., 282 F.3d 839, 841 (D.C. Cir. 2002). The Court must also draw all reasonable inferences in favor of the nonmoving party. Waterhouse v. Dist. of Columbia, 298 F.3d 989, 991 (D.C. Cir. 2002).

## ISSUE PRESENTLY BEFORE THE COURT

As the Court will note, Defendants District of Columbia and Sean Moore do not seek summary judgment on Plaintiff's claim of assault and battery relating to the May 8th incident.   Therefore, this claim will be presented to the jury at trial.   Defendants do seek summary judgment on Plaintiff's claim of wrongful arrest relating to the May 8th

incident.  Defendants' argument lacks merit and is belied by the evidence and caselaw of this jurisdiction.

Concerning the May 23rd incident, Defendants seek summary judgment as to all of Plaintiff's claims.  In the interest of judicial efficiency and narrowing the scope of issues at trial, Plaintiff agrees to dismiss her claims against Sergeant Stuart Emmerman and Officer Nancy Oliver.  However, Plaintiff's claim of wrongful arrest against Defendants District of Columbia, Officers Scott and Anderson are well supported by the facts of this case and should be presented at trial.

## WRONGFUL ARRESTS

Defendants' motion inappropriately seeks to usurp the province of jury by asking this Court to dismiss Plaintiffs' wrongful arrest claims based upon the doctrines of probable cause and qualified immunity.  Contrary to Defendants' position, it is has been routinely held that in a false arrest case, the issue of probable cause is a mixed question of fact and law that the trial court should ordinarily leave to the jury. See District of Columbia v. Minor, 740 A.2d 523 (D.C. 1999)([T]he fundamental problem with the District's position is that it insufficiently recognizes the jury's role as the finder of the facts upon which the probable cause determination is made); Safeway Stores, Inc. v. Kelly, 448 A.2d 856, 852 (D.C.1982); see also Dent v. May Dept. Stores Co., 459 A.2d 1042, 1044 (D.C. 1982); Lansburgh's, Inc. v. Ruffin, 372 A.2d 561, 564 (D.C. 1977) (The issue of probable cause for false arrest is a mixed question of law and fact); Neisner Brothers, Inc. v. Ramos, 326 A.2d 239, 240 (D.C. 1974) Indeed, summary judgment and/or dismissal is only appropriate where "the undisputed facts considered in the light

most favorable to the moving party establish probable cause." Safeway Stores, Inc. at 863. Here, the circumstances surrounding the police misconduct on May 8th and 25th make clear that there are a number of facts in dispute.

Defendants' argument that Officer Moore had probable cause to arrest Plaintiff on May 8th lacks persuasion. An officer has probable cause to arrest an individual when he or she has reasonably trustworthy information at the moment of arrest "sufficient to warrant a reasonably prudent [person] in believing that the [suspect has] committed or [is] committing an offense." Brown v. United States, 590 A.2d 1008, 1012 (D.C. 1991)(citations omitted)  Officer Moore claims that he asked Ms. Dingle to leave the area and Ms. Dingle responded by "going off on me, swearing, yelling…"(Deposition Testimony of Moore, Exhibit I at pp. 17-18)

However, Ms. Dingle and other witnesses have described a very different version of the event. As Plaintiff and her friends were exiting the area, Plaintiff Monique Dingle's cell phone rang and she answered it. (Exhibit A at pp. 54-55) Defendant Moore became incensed and struck Plaintiff on her shoulders and said, "Don't fuck with me. I told you to get the fuck off the block." (Exhibit A at pp. 43-44)  Immediately thereafter, Defendant Moore grabbed Plaintiff Monique Dingle's left arm, twisted it behind her back and grabbed her by the neck. Defendant Moore then forced Plaintiff's body onto the police car. (Exhibit A at pp. 43-45, 61-62)  Ms. Dingle is a very slight young woman. (Exhibit I at pp. 20-12)

The undisputed eyewitness testimony in this case is that Plaintiff and her friends were exiting the area when Officer Moore violently confronted the Plaintiff. (Exhibit A

at pp. 54-55; Exhibit B at pp.1-2; Exhibit C at pp. 1-2; and Exhibit D at pp. 1-2)
Defendant Moore then grabbed Plaintiff Dingle's hair, slammed her face against the
police car and placed handcuffs on her right arm.  The overwhelming evidence dismisses
Defendants' claim of probable cause.

Further, it is the expert opinion of Robert Klotz that "the arrest lacked probable
cause for the charge Disorderly Conduct, Loud and Boisterous.  As a result the arrest
was a false arrest and the force utilized by the officer was excessive and unnecessary."
(Exhibit E at p. 4)  Mr. Klotz, a former Deputy Chief of Police for the Metropolitan
Police Department, **has also expressed the opinion that even when the event is
viewed in a light crediting Officer Moore's testimony**, "the arrest still lacks the
requisite elements necessary for a valid arrest."  (Id. at p. 4)  Mr. Klotz's expert report
cites In re W.H.L., 743 A.2d 1226 (D.C. 2000) which specifically states:

> [T]he bare possibility that words directed to a police officer may provoke
> violence by others does not suffice to show disorderly conduct; rather the
> words must create a likelihood or probability of such reaction.  Moreover,
> the focus ordinarily must be on the likelihood of a violent reaction by
> persons other than a police officer to whom the words were directed,
> because "[a] police officer is expected to have a greater tolerance for
> verbal assaults" and is "especially trained to resist provocation" by "verbal
> abuse that might provoke or offend the ordinary citizen...Shepherd v.
> District of Columbia, 929 A.2d 417 (D.C. 2007).

It is Mr. Klotz's expert opinion that "[N]o reasonable, trained officer could
believe this to be proper."  (Exhibit E at p. 5)  Plaintiff's claim is supported by a number
of eyewitnesses, the pertinent legal precedent, and Plaintiff's expert witness Robert
Klotz.  Mr. Klotz's impeccable qualifications are discussed in detail in his report, but
needless to say, Mr. Klotz has over 25 years of experience in the DC MPD's office and

has unequivocally stated that the arrest of Ms. Dingle was improper. Defendants have chosen not to depose Mr. Klotz and have also chosen not to retain an expert on this issue. Mr. Klotz's expert opinion has not been challenged and is persuasive.

Defendants' reliance on the doctrine of qualified immunity is also misplaced. In suits for unlawful arrest brought under §1983,[3] qualified immunity shields police officers from liability only if " 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officer possessed.' " Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Here, no reasonable officer could have believed that the arrest of Ms. Dingle was lawful. (Exhibit E at p. 5) According to several eyewitnesses, all that Ms. Dingle did wrong was answer her cellular phone. Moreover, even if the Court were to credit Officer Moore's testimony, Ms. Dingle was not guilty of the offense of disorderly conduct.

As the DC Court of Appeals has stated, and as discussed by Robert Klotz in his report, "the bare possibility that words directed to a police officer may provoke violence by others does not suffice to show disorderly conduct..." Shepherd v. District of Columbia, 929 A.2d 417 (D.C. 2007). The Court should also note that any subjective beliefs and intents held by police officers are irrelevant to the defense of qualified immunity. Anderson v. Creighton, 483 U.S. 635, 641 (1987). As Robert Klotz stated in

---

[3] The defense of qualified immunity is only applicable in §1983 cases and is not pertinent to Plaintiff's common law claims of false arrest. To avoid liability for common law false arrest, a police officer must demonstrate either (1) that he or she had probable cause to make the arrest or (2) that he or she believed in good faith that the arrest was lawful and that this belief was reasonable. As discussed previously, Robert Klotz has stated that probable cause did not exist for this arrest and the officer's belief was unreasonable. (Exhibit E at pp. 3-5)

his report, "[N]o reasonable, trained officer could believe this to be proper." (Exhibit E at p. 5)

A clear factual dispute exists concerning what exactly occurred on the evening of May 8th. In similar cases where such a dispute existed, courts have routinely withheld judgment concerning the issue of qualified immunity until the trier of fact has resolved any factual disputes. The DC Court of Appeals has recently stated that: "the factual issues, if disputed, need to be resolved by the trier of fact prior to the court determining whether qualified immunity will serve as a defense." Sabir v. District of Columbia, 755 A.2d 449, 455 (D.C. 2000). This seems to be the appropriate course of action in the present case.

### May 23rd Incident

Defendants' identical arguments concerning the false arrest of Plaintiff on May 23rd fail according to the same analysis. First, Defendants' argument that Ms. Dingle's criminal record consists of only the May 8th event lacks weight. An official record of the arrest is not necessary. "The gist of any complaint for false arrest or false imprisonment is an unlawful detention...." Clarke v. District of Columbia, 311 A.2d 508, 511 (D.C.1973). "[T]he unlawful detention of a person without a warrant or for any length of time whereby he is deprived of his personal liberty or freedom of locomotion ... by actual force, or by fear of force, or even by words" constitutes false imprisonment. Tocker v. Great Atlantic & Pacific Tea Co., 190 A.2d 822, 824 (D.C.1963); accord, Marshall v. District of Columbia, 391 A.2d 1374, 1380 (D.C.1978). In determining whether particular conduct constitutes false arrest or imprisonment it is not the

subjective state of mind of the plaintiff but, rather, the "actions or words of the defendant [which] must at least furnish a basis for a reasonable apprehension of present confinement." Id. at 1380 (citations omitted).

The testimony of Plaintiff Dingle and her mother, Angela Dingle, clearly establish that Plaintiff had a basis for her reasonable apprehension of present confinement. At the station, Defendants Maurice Scott and David M. Anderson, along with several other officers, advised Plaintiff Dingle that her only options were to pay the fine or be immediately arrested. (Exhibit A at pp. 82-83; Exhibit F at pp. 20, 22-27; Deposition Testimony of Defendant Scott, Exhibit G at p. 10-12) Defendants then actively participated in and/or caused the unlawful arrest of Plaintiff by not allowing Plaintiff to leave the Third District Station, fingerprinting Plaintiff, and restricting Plaintiff's physical movement. Plaintiff and her mother both testified that they were surrounded by at least six officers and were intimidated. Plaintiff and her mother were not allowed to leave the station and their physical movement was restricted. (Exhibit A at pp. 85-89, 97; Exhibit F at pp. 22-26, 35-36)

Angela Dingle's testimony is particularly persuasive on this issue. Plaintiff's mother testified to the following:

> **Like I said, the officers were all around and standing in front of us. And they asked—one of the officers asked me to—okay, another officer asked me to hold her jewelry so that she could be arrested. And then Monique stood up and put out her hands (demonstrating). And the whole time I was asking why she was being arrested. (Exhibit F at p. 25)**

***

Q:    Did any officer ever say don't leave?

A:   I don't know what Officer Anderson would have said to her behind closed doors.

Q:   Okay.

A:   But no, they did not say don't leave while we were sitting on the bench.

Q:   Did you ever hear—

A:   We could not leave while the officers were standing there because we couldn't get out; they blocked us in.

Q:   How do you mean blocked you?

A:   They stood physically in front of us.  There were at least six officers standing in front of us.

Q:   But those officers were discussing with you—

A:   No, they weren't.  They were telling us that she needed to be arrested because she was resisting arrest.  (Exhibit F at pp. 34-35)

***

When we were sitting on the bench and they said she had to be arrested, several of the officers from behind the bench and from other places in the station had come to converge in front of us.  We could not leave; we could not get up without—I would not have felt comfortable attempting to walk out of there.  (Exhibit F at pp. 35-36.)

Defendants' argument that Plaintiff Dingle was not arrested on this date lacks persuasion in light of Angela Dingle's testimony.  Plaintiff Dingle's testimony essentially mirrors Angela Dingle's account.  Plaintiff testified: (1) that she was told that she needed to be arrested to request a trial; (2) that she was resisting arrest; and (3) that there was more than four officers standing around Plaintiff and her mother.  (Exhibit A at pp. 83-86; 97)   Clearly, Plaintiff had a reasonable apprehension of present confinement.

- 11 -

Further, it is Robert Klotz's expert opinion that:

> The actions of the officers in dealing with Dingle at the Third District were a violation of national and local police standards dealing with officer's contact with citizens. **No reasonable trained police officer could believe this to be proper.** (Exhibit E at p. 5)(emphasis added).

Mr. Klotz also opined that even when viewing the evidence in the light most favorable to the Defendants:

> [T]he fingerprinting of a person in Dingle's situation is a voluntary action on the part of the person seeking a court date. The officer acknowledges that Dingle was not advised of the options available to her and therefore forcing her to be taken into custody and be fingerprinted were improper. (Exhibit E at p. 4.)(referring to the Deposition Testimony of Defendant Anderson, Exhibit H at p. 24-25; wherein Officer Anderson testified that he took Ms. Dingle to the back of the station and fingerprinted her. Defendant Anderson advised Plaintiff that she must sign the citation that states that she has been arrested and charged with a criminal offense.)

Similar to the May 8th event, there exists a clear factual dispute concerning what occurred on May 23rd. Therefore, the factual issues need to be resolved by the trier of fact prior to the court determining whether the defenses of probable cause or qualified immunity are applicable. See Sabir v. District of Columbia, 755 A.2d 449, 455 (D.C. 2000). Also, the defenses of probable cause and qualified immunity are inapplicable considering Robert Klotz's unchallenged expert opinion.

### DEFENDANTS' ARGUMENT CONCERNING RESPONDEAT SUPERIOR

Defendants, in their motion, correctly state that the District of Columbia is not liable for constitutional torts of its employees or agents on the theory of respondeat superior. However, it is well-established that the District of Columbia may be liable on a theory of respondeat superior for common law torts committed by its agents acting within the course and scope of their employment. See, e.g., District of Columbia v.

White, 442 A.2d 159, 162 (D.C. 1982); District of Columbia v. Davis, 386 A.2d 1195, 1202 (D.C. 1978). See also, Wade v. District of Columbia, 310 A.2d 857 (D.C. 1973). Therefore, the District of Columbia is liable for Plaintiffs' common law claims of false arrest and assault and battery.

## PUNITIVE DAMAGES

Plaintiff was assaulted for no apparent reason on May 8th and when she went with her mother to the station to dispute her noise violation, she was met with additional police misconduct. Subsequent to this conduct, Plaintiff missed the majority of her senior class trip for the court hearing, where Defendants failed to appear and the charges were dismissed. Plaintiff can establish that (1) the defendants acted with the intent to injure or in willful disregard for the rights of the plaintiff and (2) the defendants' conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of plaintiff. District of Columbia v. Jackson, 810 A.2d 388, 396 (D.C. 2002). More specifically, punitive damages are appropriate given the testimony of Plaintiff, Morgan Dingle, Katrina Wheeler, and Precious Goodbee concerning Defendant Moore's violent conduct.

The Defendants actions on May 23rd also warrant punitive damages. Plaintiff was surrounded by police officers, threatened by a claim of resisting arrest, asked to take off her jewelry; and then fingerprinted. None of which was necessary to request a court hearing in this case. A court hearing where no member of the Metropolitan Police Department attended and where all charges against Ms. Dingle were dismissed.

As a result of the aforementioned police misconduct, Ms. Dingle now has a permanent arrest record.   Prior to this incident, Ms. Dingle had an exemplary and unblemished background.   As Robert Klotz has opined, Ms. Dingle's criminal record "will affect her negatively in the future in a variety of ways, including job applications, and security clearances." (Exhibit E at p. 4)

## CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that Defendants' Motion for Partial Summary Judgment be denied.

Respectfully submitted,

REGAN ZAMBRI & LONG, PLLC

By: _____ /s/Patrick M. Regan
Patrick M. Regan         No. 336107
Paul J. Cornoni          No. 489398
1919 M Street, NW, Suite 350
Washington, D.C.  20036
PH:  (202) 463-3030
*Co-Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

### Civil Division

| | |
|---|---|
| **MONIQUE DINGLE** | : |
| **Plaintiff,** | : |
| **v.** | : |
| **DISTRICT OF COLUMBIA, <u>et al.</u>** | : |
| **Defendants.** | : |

_____  **Civil Action Nos. 06-00331**
                                                                              **06-00950**

| | |
|---|---|
| **MONIQUE DINGLE** | : **(RCL)** |
| **Plaintiff,** | : |
| **v.** | : |
| **MAURICE SCOTT, <u>et al.</u>** | : |
| **Defendants.** | : |

## <u>PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE</u>

Plaintiff, by and through undersigned counsel, hereby submits her Statement of

Material Facts in Dispute and further state:

1.    Defendants' Statement of Material Facts #3: Denied.  Plaintiff testified that she did not notice any other persons except for her group of six people leave the party. Plaintiff testified that there was less than fifteen (15) people in the general area outside at the time of this incident.  (Exhibit A at pp. 36-38.)

2.    Defendants' Statement of Material Facts #5: Denied as phrased.  Plaintiff testified that there were less than fifteen (15) people in the general area. (<u>Id</u>.)

3.    Defendants' Statement of Material Facts #6: Denied.  Plaintiff testified that after being instructed by Officer Moore that they needed to leave, Plaintiff and her friends began to immediately leave when Ms. Dingle's phone rang. (Exhibit A at pp. 54-55)

4.    Defendants' Statement of Material Facts #7: Denied as phrased.  Plaintiff testified that after being instructed by Officer Moore that they needed to leave, Plaintiff and her friends began to immediately leave when Ms. Dingle's cell phone rang.  (Id.)

5.    Defendants' Statement of Material Facts #8: Denied as phrased as to the term "crowd."

6.    Defendants' Statement of Material Facts #12: Denied as phrased.  Plaintiff suffered injuries to her shoulders, neck and head as a result of Defendant Moore's inexcusable and violent actions.  (Exhibit A at pp. 48, 61)

7.    Defendants' Statement of Material Facts #16: Denied as phrased.  Plaintiff gave Officer Moore her social security number on the night in question.  (Exhibit A at pp. 68-69)

8.    Defendants' Statement of Material Facts #20: Denied as phrased.  Plaintiff was searched by Defendant Moore and during this search, Defendant Moore emptied the contents of all of Plaintiffs pockets.  Plaintiff was never given back her dental retainer in this case.  Plaintiff's dental retainer cost approximately $800.00.  (Exhibit A at pp. 76-77)

9.    Defendants' Statement of Material Facts #26: Denied.  Plaintiff was told by numerous Officers that she needed to be arrested in order to request a trial.  (Exhibit A at pp. 83-86; 97; Exhibit F at pp. 25, 34-36)

10.    Defendants' Statement of Material Facts #27: Denied.  Plaintiff and her mother were surrounded by approximately six police officers and instructed that Plaintiff was going to be arrested.  Plaintiff and her mother felt that they were not allowed to leave at this point.  (Id.)

11.    Defendants' Statement of Material Facts #39: Denied.  Plaintiff was lead to the back of the station and was fingerprinted on this date.  (Exhibit I at pp. 24-25)

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE

12.    Whether Defendant Moore committed the torts of assault and battery on the evening of May 8, 2005.  (Exhibit A at pp. 43-45, 61-62; Exhibits B, C, D)

13.    Whether Defendant Moore had probable cause to arrest Plaintiff Monique Dingle on May 8, 2005.  (Exhibit E at pp. 3-5)

14.    Whether Defendant Moore had a reasonable belief that his conduct was proper on May 8, 2005.  (Exhibit E at pp. 3-5)

15.    Whether Monique Dingle was falsely arrested on May 8, 2005.  (Exhibit E at pp. 3-5)

16.    Whether Monique Dingle committed any criminal offenses on May 8, 2005. (Exhibit E at pp. 3-5)

17.    Whether Plaintiff was wrongfully arrested on May 23, 2005. (Exhibit E at pp. 3-5)

18.    Whether Plaintiff was told by a number of police officers that she needed to be arrested in order to receive a trial date. (Exhibit A at pp. 83-86; 97; Exhibit F at pp. 25, 34-36)

19.    Whether at least six police officers stood around Plaintiff and her mother and refused to allow them to leave the police station on May 23, 2005. (Exhibit A at pp. 83-86; 97; Exhibit F at pp. 25, 34-36)

20.    Whether Ms. Dingle had a reasonable basis for her fear of present confinement on May 23, 2005. (Exhibit A at pp. 83-86; 97; Exhibit F at pp. 25, 34-36)

21.    Whether Monique Dingle was wrongfully arrested on May 23, 2005. (Exhibit E at pp. 3-5)

22.    Whether Ms. Dingle was improperly fingerprinted on May 23, 2005. (Exhibit E at pp. 3-5)

Respectfully submitted,

REGAN ZAMBRI & LONG, PLLC


By:    _____/s/**Patrick M. Regan**_____
Patrick M. Regan          No. 336107
Paul J. Cornoni           No. 489398
1919 M Street, NW, Suite 350
Washington, D.C.  20036
PH:   (202) 463-3030
*Co-Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### Civil Division

| | |
|---|---|
| **MONIQUE DINGLE** | : |
| **Plaintiff,** | : |
| **v.** | : |
| **DISTRICT OF COLUMBIA, <u>et al</u>.** | : |
| **Defendants.** | : |

**Civil Action Nos. 06-00331**
                                     **06-00950**

| | |
|---|---|
| **MONIQUE DINGLE** | : **(RCL)** |
| **Plaintiff,** | : |
| **v.** | : |
| **MAURICE SCOTT, <u>et al</u>.** | : |
| **Defendants.** | : |

### <u>ORDER</u>

Upon consideration of the Defendants' Motion for Partial Summary Judgment, the Opposition thereto filed by the Plaintiff, and a review of the entire record herein, it is this _____ day of _____, 2007 hereby:

ORDERED that the Defendants' Motion is hereby DENIED in its entirety.

SO ORDERED.


_____
Royce C. Lamberth
United States District Judge

cc:

Patrick M. Regan, Esquire
Paul J. Cornoni, Esquire
1919 M Street, NW, Suite 350
Washington, D.C. 20036

Carl Schifferle, Esquire
Kersyln Featherston, Esquire
Assistant Attorney General
441 Fourth Street, NW, 6th Floor South
Washington, DC 20001
PH:   (202) 724-6624
FAX:  (202) 724-3635
*Counsel for Defendants*