# Exhibit G

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
3    - - - - - - - - - - - - - - - - +
                               |
4   MONIQUE DINGLE,            |
                               |
5        Plaintiff,  | Civil Action Nos.
                     |    06-00950
6   vs.              |    06-00331
                     |
7   DISTRICT OF COLUMBIA, et al,  |
                               |
8        Defendants.   |
                       |
9    - - - - - - - - - - - - - - - - +
                       |
10  MONIQUE DINGLE,            |
                               |
11       Plaintiff,  |
                     |
12  vs.              |
                     |
13  MAURICE SCOTT, et al,      |
                               |
14       Defendants.   |
                       |
15  - - - - - - - - - - - - - - - - - - x
16      Deposition of Officer Maurice Scott
17          Washington, D.C.
18          January 17th, 2007
19            11:25 a.m.
20  Job No. 1-94799
21  Pages 1 - 40
22  Reported by:  Laurie Bangart-Smith
```

2

Deposition of
OFFICER MAURICE SCOTT

Held at the offices of:

OFFICE OF ATTORNEY GENERAL

441 Fourth Street, N.W., 6th Floor

Washington, D.C. 20001

(202)727-3500

Taken pursuant to notice, before Laurie
Bangart-Smith, Registered Professional Reporter,
Certified Realtime Reporter, and Notary public in and
for the District of Columbia.

3

APPEARANCES

ON BEHALF OF THE PLAINTIFF:
    PAUL CORNONI, ESQUIRE
    REGAN, ZAMBRI & LONG, PLLC
    1919 M Street, N.W.
    Suite 350
    Washington, D.C. 20001
    (202)463-3030


ON BEHALF OF THE DEFENDANTS:
    JAMES H. VRICOS, ESQUIRE
    ASSISTANT ATTORNEY GENERAL
    Government of the District of Columbia
    441 Fourth Street, N.W.
    Washington, D.C. 20001

ORIGINAL

4

EXAMINATION INDEX
                                    PAGE
EXAMINATION BY MR. CORNONI . . . . . . . . . . . 5




           E X H I B I T S
              (NONE)

9

1    A    In the Station.
2    Q    Was it later on in your shift or was it
3 earlier in your shift?
4    A    It might have been later on.
5    Q    Okay. What happened first?
6    A    What I recall is that the plaintiff and the
7 mother came to the Station requesting a court date in
8 reference to a 61D. I advised someone in the Station
9 on the procedure of that.
10    Q    You advised someone in the Station what?
11    A    What was the procedure for a 61D.
12    Q    Who did you advise?
13    A    I don't remember who I advised that day, but
14 I know talking to Officer Anderson, he works the cell
15 block, in reference to the protocol of the 61D.
16    Q    Okay. You didn't advise Officer Anderson?
17    A    I did advise Officer Anderson what's the
18 protocol of 61D.
19    Q    Okay. So you explained to Officer Anderson
20 what the protocol was for a 61D?
21    A    Yes.
22    Q    Okay. So when Ms. Dingle and her mother

10

1 came into the Station, did you see them actually enter
2 the Station?
3    A    I don't remember.
4    Q    What drew your attention to them?
5    A    Whoever comes to the Station, you know, and
6 comes to the counter, we have to -- you know, it's
7 like Customer Service. You have to see what they
8 want.
9    Q    So they came to the counter, Ms. Dingle and
10 her mother. Was anyone else with them?
11    A    Not that I remember.
12    Q    Were you the first officer to speak to
13 Ms. Dingle and her mother?
14    A    Yes.
15    Q    What did they say to you at that time?
16    A    They was wanting to request a hearing for a
17 court date in reference to a 61D.
18    Q    What did you say to them, if anything?
19    A    If I don't know the protocol, I will get
20 assistance from another officer who knows the protocol
21 of the 61D.
22    Q    And then did you go ask another officer what

11

1 the protocol was?
2    A    Yes.
3    Q    Who did you ask?
4    A    Officer Anderson.
5    Q    What did Officer Anderson tell you?
6    A    He advised me that the process of getting a
7 court date for a 61D is that the defendant has to
8 submit to an arrest in order to, you know, in order to
9 get a court date.
10    Q    Did he say anything else to you?
11    A    I believe that's how it was phrased, "submit
12 to an arrest in order to get a court date."
13    Q    And so no, he didn't say anything else to
14 you that you recall?
15    A    That I recall, no.
16    Q    Okay. What did you do after getting that,
17 being advised that by Officer Anderson?
18    A    I advised the defendant or the plaintiff in
19 this matter the same thing he advised me.
20    Q    So you told Ms. Dingle that she needed to --
21 in order to request a trial, she needed to be
22 arrested?

12

1    A    Yes.
2    Q    And what did Ms. Dingle or her mother say at
3 that point?
4    A    I believe at that point she was advising me
5 that in order to receive a court date you don't have
6 to pay the fine, or something to that matter, in order
7 to receive a court date.
8    Q    Okay. Who said that to you?
9    A    I believe the mother said that to me.
10    Q    Did Ms. Dingle say anything to you at this
11 point?
12    A    Not that I know of.
13    Q    After Ms. Dingle's mother said that to you,
14 what happened next?
15    A    I don't know who I advised next after that,
16 but I remember getting Sergeant Emerman in reference
17 to this matter.
18    Q    Did you do anything else to Ms. Dingle or to
19 her mother, either advise them or do anything, prior
20 to getting Sergeant Emerman?
21    A    No.
22    Q    And so did you go get Sergeant Emerman?