# Exhibit H

DEPOSITION OF OFFICER DAVID M. ANDERSON
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007
Case 1:06-cv-00950-RCL   Document 40-9   Filed 12/05/2007   Page 2 of 4

1 (Pages 1 to 4)

### Page 1

```
IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF COLUMBIA

----------------+
                |
MONIQUE DINGLE, |
                |
     Plaintiff, | Civil Action Nos.
                | 06-00950,
 vs.            | 06-00331
                |
DISTRICT OF COLUMBIA, et al, |
                |
     Defendants.|
                |
----------------+
                |
MONIQUE DINGLE, |
                |
     Plaintiff, |
                |
 vs.            |
                |
MAURICE SCOTT, et al, |
                |
     Defendants.|
                |
-------------------------------x

     Deposition of Officer David M. Anderson
          Washington, D.C.
          January 17th, 2007
          10:00 a.m.
Job No. 1-94799
Pages 1 - 65
Reported by: Laurie Bangart-Smith
```

### Page 2

```
          Deposition of
     OFFICER DAVID M. ANDERSON

Held at the offices of:
     OFFICE OF ATTORNEY GENERAL
     441 Fourth Street, N.W., 6th Floor
     Washington, D.C. 20001
     (202)727-3500










     Taken pursuant to notice, before Laurie
Bangart-Smith, Registered Professional Reporter,
Certified Realtime Reporter, and Notary public in and
for the District of Columbia.
```

### Page 3

APPEARANCES

ON BEHALF OF THE PLAINTIFF:
    PAUL CORNONI, ESQUIRE
    REGAN, ZAMBRI & LONG, PLLC
    1919 M Street, N.W.
    Suite 350
    Washington, D.C. 20001
    (202)463-3030

ON BEHALF OF THE DEFENDANTS:
    JAMES H. VRICOS, ESQUIRE
    ASSISTANT ATTORNEY GENERAL
    Government of the District of Columbia
    441 Fourth Street, N.W.
    Washington, D.C. 20001

ORIGINAL

### Page 4

EXAMINATION INDEX
                                              PAGE
EXAMINATION BY MR. CORNONI . . . . . . . . . . . 5
EXAMINATION BY MR. VRICOS . . . . . . . . . . . 57
REEXAMINATION BY MR. CORNONI . . . . . . . . . . 60


          E X H I B I T S
       (Attached to the Transcript)
DEPOSITION EXHIBIT                            PAGE
No. 1   Citation to Appear in Court            18
No. 2   61D Form                               18

DEPOSITION OF OFFICER DAVID M. ANDERSON
CONDUCTED ON WEDNESDAY, JANUARY 05, 2007
Case 1:06-cv-00950-RCL   Document 40-9   Filed 12/05/2007   Page 3 of 4

6 (Pages 21 to 24)

**Page 21**

1  A  Yes.
2  Q  Approximately how many other officers did
3  you see at that point? I know you stated that you
4  can't recall their names. Do you remember how many?
5  A  About three on the front counter, on the
6  other side of the front counter.
7  Q  So is it my understanding that Ms. Dingle
8  and her mother were on one side of the counter and
9  then there were three officers, one being Officer
10 Patterson, on the other side?
11 A  No. Ms. Dingle -- the complainant -- and
12 the officers were on the same side of the counter.
13 Q  Did you speak to her mother during that
14 initial encounter?
15 A  Yes.
16 Q  What did you say to her?
17 A  Ms. Dingle's mother asked me was this an
18 arrest, and I told her, "Yes and no." It is because
19 numbers were generated but no because she's not being
20 incarcerated at this point in time.
21 Q  Is there a difference there?
22 A  Yes.

**Page 22**

1  Q  Explain that to me.
2  A  The difference is, if they would have locked
3  her up on the day in question, they would have brought
4  her to the Third District. We would have had a female
5  searcher would have took all her stuff off her, and we
6  would have placed her in the cell.
7  Q  Okay. Are there any other options than
8  that?
9  A  As to being arrested? No.
10 Q  But the other option is you're given a
11 citation?
12 A  Right, the 61D.
13 Q  Okay. Did Ms. Dingle's mother understand
14 the difference that you were trying to explain to her?
15 A  Yes and no, because Ms. Dingle's mother was
16 kind of hostile. She was angry. She was angered at
17 something. I was trying to calm her down but to no
18 avail. I couldn't. So I tried to get the complainant
19 out as quick as possible.
20 Q  Okay. Do you recall what Ms. Dingle's
21 mother said to you?
22 A  Well, she was ranting and raging about a lot

**Page 23**

1  of stuff. I mean I didn't really pay no attention to
2  her. I just tried to get Ms. Dingle, the complainant,
3  out of the -- take care of this, get her a number and
4  get her out of the station.
5  Q  Do you recall any exact statements that she
6  made to you that day, Ms. Dingle's mother?
7  A  Why was my daughter being arrested.
8  Q  Other than that?
9  A  That's it.
10 Q  What was your answer to that question?
11 A  Technically she's not being arrested. She
12 came up to the Third District to either pay the fine
13 or request a court date. That's what I'm doing now.
14 I'm giving her a court date so she can appear at a
15 later date in court.
16 Q  Did you place handcuffs on Ms. Dingle that
17 day?
18 A  No.
19 Q  Did anyone else?
20 A  No.
21 Q  At any time during this encounter on
22 May 23rd did you see any handcuffs ever placed on

**Page 24**

1  Ms. Dingle?
2  A  No.
3  Q  Did you fingerprint Ms. Dingle?
4  A  If you're referring to Livescanning, no. I
5  only put one thumbprint, which was the right
6  thumbprint, on the back of the citation form.
7  Q  So she was fingerprinted but just her right
8  thumb?
9  A  Just her right thumb.
10 Q  What was the purpose of that?
11 A  For the court document. Everybody who's
12 issued a 61D has to have the thumbprint on the back of
13 Exhibit 1. If not, then we write "refused" on it.
14 Q  What happens if someone refuses?
15 A  Just they go to court. Nothing happens.
16 Q  Does the person have the right to refuse to
17 give their thumbprint?
18 A  Yes.
19 Q  Did you advise Ms. Dingle of that right?
20 A  Yes.
21 Q  How did you advise her?
22 A  When I first encountered Ms. Dingle, the

DEPOSITION OF OFFICER DAVID M. ANDERSON
CONDUCTED ON WEDNESDAY, JANUARY 10, 2007
Case 1:06-cv-00950-RCL   Document 40-9   Filed 12/05/2007   Page 4 of 4

7 (Pages 25 to 28)

25

1 complainant, out in front, I said, with your consent,
2 I need you to walk back with me so you can sign your
3 paperwork, and I'll put your thumbprint on you.  Your
4 mother can come if you want to.  It's not going to be
5 that long.  You're not under arrest.  I'm going to
6 walk you back to the back.  The reason why I walk you
7 to the back is because we don't have -- our
8 fingerprint pad in the station was missing.  Other
9 than that, she would have been thumbed outside the
10 station.
11     Q  Okay.  Did you ever explain to her that she
12 didn't need to give her thumbprint?
13     A  No.
14     Q  Why not?
15     A  Once she consented to it, I figured I didn't
16 need to.
17     Q  Prior to her giving her consent, did you
18 think it would be a good idea to let her know that she
19 didn't have to give her thumbprint?
20     A  No.
21     Q  You stated a term that I'm not familiar
22 with:  Livescanning.

26

1     A  Yes.
2     Q  Can you explain to me what that is.
3     A  Livescanning is when, if you're placed under
4 arrest for a charge of say disorderly conduct and you
5 wanted to make citation, what we do is we take
6 fingerprints of all ten of your fingers which is also
7 being photographed, we place it in our machine, and it
8 goes down to our Automated Fingerprint Section, and
9 they generate a PDID number, which is our police
10 identification number, which generates a six-digit
11 number.
12     Q  You stated a phrase:  "Make citation."  What
13 does that mean?
14     A  Yeah, if you get locked up for misdemeanors,
15 you are eligible to make citation if you're not on any
16 kind of supervision, parole or probation.
17     Q  And when you say "make citation," you mean
18 you're eligible to be given a citation and allowed to
19 leave the jail --
20     A  Yes.
21     Q  -- rather than staying and going to C-10?
22     A  Yes.

27

1     Q  Now, Ms. Dingle's thumbprint, where does
2 that go after -- after going on this -- I understand
3 she makes her thumbprint on the form, but you referred
4 earlier to thumb prints going certain places.  Where
5 did Ms. Dingle's thumbprint go?
6     A  Right inside the box.
7     Q  Does it go into any systems?
8     A  No.
9     Q  Does it generate a PDID number?
10     A  No.
11     Q  Do you know if Ms. Dingle has a PDID number?
12     A  I never gave her one, and there wasn't one
13 never generated for her, from what I recall.
14     Q  It's your understanding that Ms. Dingle did
15 not receive a PDID number as a result of the earlier
16 May arrest?
17     A  Yes.
18     Q  And it's also your understanding that she
19 did not receive a PDID number as a result of the
20 May 23rd arrest?
21     A  Yes.
22     Q  Now, when you gave Ms. Dingle Exhibit 1, did

28

1 you give her Exhibit 2 as well?
2     A  No, I didn't give her Exhibit 2.
3     Q  Okay.  So what happened to the 61D that you
4 used to fill out the information on the Citation to
5 Appear in Court form?
6     A  I believe it was filed in our file cabinet.
7     Q  Okay, and where does it go after that?
8     A  A copy goes down to court with this form, we
9 keep a copy at the District, and I think that's it.
10     Q  Where does the copy go -- I understand it
11 goes to D.C. Superior Court, but is a jacket made for
12 this case?
13     A  I have no idea about that.  I don't know.
14     Q  Do you know who -- do you give it to a
15 certain person in the station, I mean the 61D to a
16 certain person in the station, and they bring it to
17 D.C. Superior Court?
18     A  I don't know about that.  I just hand it
19 back to the station clerk, and they file it.
20     Q  And do you also keep a copy of Exhibit 1 for
21 the police records in the police station?
22     A  Yes, we do.